1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

8
9
10

SETH TOEPFER, on behalf of himself and
all others similarly situated,

Case No. 2:24-cv-1694

11

                    Plaintiff,

12

**CLASS ACTION COMPLAINT**

13

        v.

**JURY TRIAL DEMANDED**

14

FORTIVE CORPORATION and
ACCRUENT LLC,

15
16

                    Defendants.

17        Plaintiff, Seth Toepfer ("Plaintiff"), on behalf of himself and all others similarly situated,

18   states as follows for his class action complaint against Defendants, Accruent LLC ("Accruent")

19   and Fortive Corporation ("Fortive") (collectively, "Defendants"):

20                              <u>**NATURE OF THE ACTION**</u>

21        1.        Between October and November 2023, Accruent, a company that specializes in

22   workplace and asset management software for unifying the built environment, and its parent

23   company, Fortive, discovered they had lost control over their computer network and the highly

24   sensitive personal information stored on their computer network in a data breach perpetrated by

25   *multiple* cybercriminals ("Data Breach"). Upon information and belief, the Data Breach has

26   impacted at least 31, 478 thousand current and former employees.

27
28

CLASS ACTION COMPLAINT – 1

1      2.      On information and belief, the Data Breach occurred between January 25, 2023,

2  and November 6, 2023-an appalling eleven months long. Following an internal investigation in

3  or around November 2023, Defendants learned cybercriminals had gained unauthorized access

4  to employees' personally identifiable information ("PII"), including but not limited to name,

5  Social Security number, date of birth, driver's license information, passport number, birth

6  certificate number, financial information, and health insurance information.

7      3.      On or about October 3, 2024–a year and a half after the Data Breach first

8  occurred– Defendants finally began notifying Class Members about the Data Breach ("Breach

9  Notice"). A sample Breach Notice is attached as Exhibit A.

10      4.      Upon information and belief, cybercriminals were able to breach Defendants'

11  systems because Defendants failed to adequately train their employees on cybersecurity, failed

12  to adequately monitor their agents, contractors, vendors, and suppliers in handling and securing

13  the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect

14  the Class's PII—rendering them easy targets for cybercriminals.

15      5.      Indeed, Defendants' cybersecurity was so inadequate that not only did it take

16  them a year and half to recognize that cybercriminals had access to their current and former

17  employee's most sensitive information, but, following discovery of the Breach in October 2023,

18  Defendants struggled to terminate the cybercriminals' access to their systems until November 6,

19  2023.

20      6.      Defendants' Breach Notice obfuscated the nature of the breach and the threat it

21  posted—refusing to tell employees how many people were impacted, how the breach happened,

22  or why it took the Defendants a year and a half to finally begin notifying victims that

23  cybercriminals had gained access to their highly private information.

24      7.      Defendants' failure to timely report the Data Breach made the victims vulnerable

25  to identity theft without any warnings to monitor their financial accounts or credit reports to

26  prevent unauthorized use of their PII.

27

28

CLASS ACTION COMPLAINT – 2

8.      Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

9.      In failing to adequately protect their employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendants violated state law and harmed thousands of current and former employees.

10.     Plaintiff and the Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their PII. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

11.     Plaintiff is a former employee and Data Breach victim.

12.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that— private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

13.     Plaintiff, Seth Toepfer, is a natural person and citizen of Texas, where he intends to remain.

14.     Defendant, Accruent, is a limited liability company registered in Delaware, with its principal place of business located in 11500 Alterra Parkway Suite 110 Austin, Texas 78758.

15.     Defendant, Fortive, is a company incorporated in Delaware, with its principal place of business located in 6920 Seaway Boulevard, Everett, Washington, 98203. Fortive is the parent company of Defendant Accruent.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or

CLASS ACTION COMPLAINT – 3

1    value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the

2    proposed class. At least one Defendant and Plaintiff are citizens of different states.

3           17.    This Court has personal jurisdiction over Defendants because Defendant Fortive

4    maintains its principal place of business in this District and both Defendants do substantial

5    business in this District.

6           18.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

7    substantial part of the events or omissions giving rise to the claim occurred in this District.

8                        **FACTUAL ALLEGATIONS**

9    *Accruent and Fortive*

10           19.    Accruent touts itself to be "the world's leading provider of workplace and asset

11    management software for unifying the built environment." [1] It boasts an annual revenue of $270

12    million.[2]

13           20.    Fortive, the parent company of Accruent, is a company that claims to "accelerate

14    transformation in high-impact fields like workplace safety, engineering, and healthcare."[3] It

15    boasts a staggering annual revenue of $6.07 billion.[4] Further, it is the parent company of at least

16    twenty of its subsidiaries, including Accurent, that was impacted by this Data Breach.

17           21.    On information and belief, the Fortive subsidiaries that were impacted include:

18    Accruent; Advanced Sterilization Products; Censis Technologies; Fluke Corporation; Industrial

19    Scientific Corporation; Pacific Scientific Energetic Materials Company; Setra Systems; The

20    Gordian Group; FTV Employment Services; Dover Motion; Anderson Instrument Co.; Dynapar

21

22

23    [1] Accruent, https://www.accruent.com/about-us (last visited October 14, 2024).

24    [2]Zoominfo, Accruent, https://www.zippia.com/accruent-careers-13439/revenue/ (last visited October 14 2024).

25    [3] Fortive, About us, https://www.fortive.com/meet-fortive (last visited October 14 2024).

     [4] Fortive, Investor relationshttps://investors.fortive.com/news-events/press-releases/detail/12/fortive-reports-strong-
26    fourth-quarter-and-full-year-2023-results-introduces-first-quarter-and-full-year-2024-
     outlook#:~:text=For%20the%20full%20year%2C%20revenues,the%20fourth%20quarter%20and%202023 (last
27    visited October 14, 2024).

28

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

Corporation; Fluke Biomedical; Global Physics Solutions; Intelex Technologies US; Provation Software; Qualitrol Company; ServiceChannel.com Inc.; Tektronix In.; and Janos Technology.[5]

22.    On information and belief, Defendants accumulate highly private PII of their current and former employees.

23.    In collecting and maintaining their employees' PII, Defendants agreed they would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

24.    Defendants understood the need to protect current and former employees' PII and prioritize their data security.

25.    Indeed, Accruent's Privacy policy acknowledges that "we are committed to developing, implementing, maintaining, monitoring and updating a reasonable information security program[.]"[6]

26.    Fortive similarly acknowledges that it will "ensure the security of your personal data by implementing a specific set of technical and organisational security measures that are based on controls published by the Center for Internet Security.  These controls call for the use of encryption, firewalls, and other measures that ensure we provide a level of security appropriate to the risk presented by a particular situation."[7]

27.    Despite recognizing their duty to do so, on information and belief, Defendants have not implemented reasonably cybersecurity safeguards or policies to protect employees' PII or trained their IT or data security employees to prevent, detect, and stop breaches of their systems. As a result, Defendants leave significant vulnerabilities in their systems for multiple cybercriminals to exploit and gain access to employees' PII.

---

[5] Comparitech, https://www.comparitech.com/news/fortive-corporation-subsidiaries-notify-thousands-of-data-breach-that-compromised-ssns-payment-info/ (last visited October 14, 2024).

[6] Accruent, Privacy Policy, https://www.accruent.com/privacy-notice (last visited October 14, 2024).

[7] Fortive, Privacy Policy, Chrome extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.fortive.com/sites/default/files/files/Fortive_Corp_Privacy_Notice.pdf (last visited October 14, 2024).

CLASS ACTION COMPLAINT – 5

*Defendants Fail to Safeguard Employees' PII*

28.     As a condition of employment with Defendants, Plaintiff provided Defendants with his PII, including but not limited to his name, social security number, driver's license, passport number, birth certificate number, financial account number, credit card number, debit card number, and health insurance information. Defendants used that PII to facilitate their employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

29.     On information and belief, Defendants collects and maintains employees' unencrypted PII in their computer systems.

30.     In collecting and maintaining PII, Defendants implicitly agreed that they will safeguard the data using reasonable means according to state and federal law.

31.     According to the Breach Notice, Accruent admits that "in October and November 2023, we detected unusual activity within our network environment stemming from cybersecurity incidents involving *two* separate unauthorized third parties." (emphasis added). Following an internal investigation, Defendants determined that "the unauthorized third parties gained access to our network and viewed and acquired data between January 25, 2023, and November 6, 2023." Ex. A.

32.     In other words, the Data Breach investigation revealed Defendants' cyber and data security systems were so completely inadequate that it not only allowed *multiple* cybercriminals to acquire obtain files containing a treasure trove of thousands of its employees' highly private information, but these cybercriminals had *eleven months* of unfettered access.

33.     Indeed, upon information and belief, Fortive along with at least 20 of its subsidiaries, including Accruent, had their most sensitive information accessed and stolen during this Breach. The Fortive subsidiaries impacted by the Breach are listed below:

a.   Accruent: at least 2, 513 individuals impacted;

b.   Advanced Sterilization Products: at least 3,513 individuals impacted;

CLASS ACTION COMPLAINT – 6

c. Censis Technologies: at least 296 individuals impacted;

d. Fluke Corporation: at least 6,661 individuals impacted;

e. Industrial Scientific Corporation: at least 1,459 individuals impacted;

f. Pacific Scientific Energetic Materials Company: at least 2,070 individuals impacted;

g. Setra Systems: at least 1,919 individuals impacted;

h. The Gordian Group: at least 1,489 individuals impacted;

i. FTV Employment Services: at least 10,680 individuals impacted;

j. Dover Motion: at least 575 individuals impacted;

k. Anderson Instrument Co.: number of individuals impacted currently unknown;

l. Dynapar Corporation: number of individuals impacted currently unknown;

m. Fluke Biomedical: number of individuals impacted currently unknown;

n. Global Physics Solutions: number of individuals impacted currently unknown;

o. Intelex Technologies US: number of individuals impacted currently unknown;

p. Provation Software: number of individuals impacted currently unknown;

q. Qualitrol Company: number of individuals impacted currently unknown;

r. ServiceChannel.com Inc.: number of individuals impacted currently unknown;

s. Tektronix In.: number of individuals impacted currently unknown;

t. Janos Technology: number of individuals impacted currently unknown.

34. Through their inadequate security practices, Defendants exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

35. On information and belief, the notorious Black Basta ransomware gang was one of the cybercriminals responsible for the cyberattack. Black Basta is one of the most active hackers, having hacked over 50 companies around the world within mere months, Black Basta

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

frequently posts the stolen private information for sale.[8] Defendants knew or should have known of the tactics that hackers like Black Basta employ.

36.     With the PII secured and stolen by Black Basta, the hackers then purportedly issued a ransom demand to Defendants. However, Defendants have provided no public information on the ransom demand or payment.

37.     On information and belief, Black Blasta plans to release all stolen information obtained from the data breach onto its leak page.

## Fortive Corporation

*Fortive Corporation is a provider of essential technologies for connected workflow solutions across a range of attractive endmarkets. Our strategic segments - Intelligent Operating Solutions, Precision Technologies, and Advanced Healthcare Solutions - include well-known brands with leading positions in their markets. Our businesses design, develop, manufacture, and service professional and engineered products, software, and services, building upon leading brand names, innovative technologies, and significant market positions. We are headquartered in Everett, Washington and employ a team of more than 18,000 research and development, manufacturing, sales, distribution, service, and administrative employees in more than 50 countries around the world.*

**SITE:** *www.fortive.com*

**ADDRESS**
*6920 Seaway Blvd, Everett*
*Washington, 98203*
*United States*



38.     On or about October 3, 2024–an appalling year and a half after the Data Breach occurred– Defendants finally began notifying Class Members about the Data Breach.

---

[8] Black Basta Ransomware, Tripwire,https://www.tripwire.com/state-of-security/black-basta-ransomware-what-you-need-to-know (last visited June 3, 2023).

CLASS ACTION COMPLAINT – 8

39.     Despite their duties to safeguard PII, Defendants did not in fact follow industry standard practices in securing employees' PII, as evidenced by the Data Breach.

40.     In response to the Data Breach, Defendants contend that they have "enhanced our security monitoring capabilities and technical controls." Ex. A. Though Defendants fail to expand on what these enhancements are, such enhancements should have been in place before the Data Breach.

41.     Through Accruent's Breach Notice, Defendants recognized the actual imminent harm and injury that flowed from the Data Breach and encouraged breach victims to "remain vigilant for incidents of identity theft and fraud by regularly reviewing your account statements and monitoring your credit reports for unauthorized activity." Ex. A

42.     Through the Data Breach, Defendants recognized their duty to implement reasonable cybersecurity safeguards or policies to protect employees' PII, insisting that, despite the Data Breach demonstrating otherwise, they "value and respect the privacy of your information." Ex. A.

43.     On information and belief, Defendants have offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

44.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

45.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

46.     On information and belief, Defendants failed to adequately train their IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing them to lose control over their employees' PII. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendants were on Notice.***

47.     It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

48.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[9]

49.     In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

50.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

51.     Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgments of data security compromises, and despite their own acknowledgment of their duties to keep PII private and secure, Defendants failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

52.     In the years immediately preceding the Data Breach, Defendants knew or should have known that their computer systems were a target for cybersecurity attacks, including

---

[9] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed September 4, 2023).

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

53.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[10]

54.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[11]

55.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[12]

56.     This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that (i) ransomware actors were targeting entities such as Defendants, (ii) ransomware gangs were ferociously aggressive in their pursuit

---

[10]   High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed September 4, 2023).

[11]   Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed September 4, 2023).

[12]   Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed September 4, 2023).

CLASS ACTION COMPLAINT – 11

of entities such as Defendants, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

57.     In light of the information readily available and accessible on the internet before the Data Breach, Defendants, having elected to store the unencrypted PII of thousands of their current and former employes in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendants' type of business had cause to be particularly on guard against such an attack.

58.     Before the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendants.

59.     Prior to the Data Breach, Defendants knew or should have known that they should have encrypted their employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

60.     Plaintiff is a former employee of Accruent and a data breach victim.

61.     As a condition of employment, Plaintiff provided Defendants with his PII, including at least his name, social security number, driver's license, passport number, birth certificate number, financial account number, credit card number, debit card number, and health insurance information. Defendants used that PII to facilitate their employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

62.     Plaintiff provided his PII to Defendants and trusted that the company would use reasonable measures to protect it according to state and federal law.

63.     Plaintiff received a Notice of Data Breach in or around October 2024.

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

64.     Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

65.     Defendants deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about the Breach for a year.

66.     As a result of their inadequate cybersecurity, Defendants exposed Plaintiff's PII for theft by cybercriminals and sale on the dark web.

67.     Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

68.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendants were required to adequately protect.

69.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through all the three main credit bureaus, and monitoring Plaintiff's credit information.

70.     Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how this Data Breach, including the exposure and loss of his Social Security number, will impact his ability to do so. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

71.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This

CLASS ACTION COMPLAINT – 13

injury was worsened by Defendants' failure to inform Plaintiff about the Data Breach in a timely fashion.

72.     Indeed, shortly after the Data Breach, Plaintiff began suffering a significant increase in spam calls. These spam calls suggest that his PII is now in the hands of cybercriminals.

73.     Once an individual's PII is for sale and access on the dark web, as Plaintiff's PII is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.13 On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach.

74.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

75.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendants.

76.     As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

      a.   The loss of the opportunity to control how their PII is used;

      b.   The diminution in value of their PII;

      c.   The compromise and continuing publication of their PII;

      d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

---

[13] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen PII; and

h.   The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the PII in their possession.

77.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

78.     The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

79.     Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

80.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

81.     One such example of criminals using PII for profit is the development of "Fullz" packages.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

82.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

83.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

84.     Defendants disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

85.     Defendants' failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants failed to adhere to FTC guidelines.***

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

86.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

87.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.   protect the personal customer information that they keep;

b.   properly dispose of personal information that is no longer needed;

c.   encrypt information stored on computer networks;

d.   understand their network's vulnerabilities; and

e.   implement policies to correct security problems.

88.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

89.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

90.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

91.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

92.     Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

93.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

94.     Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

95.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

**CLASS ACTION ALLEGATIONS**

96.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> **All individuals residing in the United States whose PII was compromised in Defendants' Data Breach, including all those who received notice of the breach.**

97.     Excluded from the Class is Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

98.     Plaintiff reserves the right to amend the class definition.

99.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

100.    **Numerosity**. Plaintiff is representative of the Class, consisting of several thousand members, far too many to join in a single action;

101.    **Ascertainability**. Members of the Class are readily identifiable from information in Defendants' possession, custody, and control;

102.    **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

103.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

104.    **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

CLASS ACTION COMPLAINT – 19

a. Whether Defendants have a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendants were negligent in maintaining, protecting, and securing PII;

d. Whether Defendants breached contract promises to safeguard Plaintiff's and the Class's PII;

e. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether Defendants' Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiff's and the Class's injuries;

h. What the proper damages measure is; and

i. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

105. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

106. Plaintiff and the Class entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

CLASS ACTION COMPLAINT – 20

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ● FAX 872.863.1109
straussborrelli.com

107.     Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

108.     Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

109.     Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII.

110.     Defendants owed—to Plaintiff and Class Members—at least the following duties to:

   a.   exercise reasonable care in handling and using the PII in their care and custody;

   b.   implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

   c.   promptly detect attempts at unauthorized access;

   d.   notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

111.     Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

112.     Defendants also have a duty to exercise appropriate clearinghouse practices to remove PII they were no longer required to retain under applicable regulations.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

113.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

114.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential PII, a necessary part of obtaining services from Defendants.

115.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII — whether by malware or otherwise.

116.    PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

117.    Defendants improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

118.    Defendants breached these duties as evidenced by the Data Breach.

119.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

    a.    disclosing and providing access to this information to third parties and

    b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

120.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

121.   Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

122.   Defendants have admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

123.   As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

124.   And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

125.   Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CLAIM FOR RELIEF**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

126.   Plaintiff incorporates all previous paragraphs as if fully set forth herein.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

127.    Under the FTC Act, 15 U.S.C. § 45, Defendants have a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

128.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII entrusted to them. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII.

129.    Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

130.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants have collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

131.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

132.    But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class Members would not have been injured.

133.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

1    that they were failing to meet their duties and that their breach would cause Plaintiff and

2    members of the Class to suffer the foreseeable harm associated with the exposure of their PII.

3          134.    Defendants' various violations and their failure to comply with applicable laws

4    and regulations constitute negligence *per se*.

5          135.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and

6    Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

7    <center>**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**</center>

8    <center>**(On Behalf of Plaintiff and the Class)**</center>

9          136.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

10         137.    Defendants offered to employ Plaintiff and members of the Class if, as a condition

11   of that employment, Plaintiff and members of the Class provided Defendants with their PII.

12         138.    In turn, Defendants agreed they would not disclose the PII they collect to

13   unauthorized persons. Defendants also promised to safeguard employees' PII.

14         139.    Plaintiff and the members of the Class accepted Defendants' offer by providing

15   PII to Defendants in exchange for employment with Defendants.

16         140.    Implicit in the parties' agreement was that Defendants would provide Plaintiff

17   and members of the Class with prompt and adequate notice of all unauthorized access and/or

18   theft of their PII.

19         141.    Plaintiff and the members of the Class would not have entrusted their PII to

20   Defendants in the absence of such an agreement with Defendants.

21         142.    Defendants materially breached the contracts they entered with Plaintiff and

22   members of the Class by failing to safeguard such information and failing to notify them

23   promptly of the intrusion into their computer systems that compromised such information.

24   Defendants also breached the implied contracts with Plaintiff and members of the Class by:

25           a.    Failing to properly safeguard and protect Plaintiff's and members of the Class's

26               PII;

27

28

CLASS ACTION COMPLAINT – 25

b.  Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c.  Failing to ensure the confidentiality and integrity of electronic PII that Defendants created, received, maintained, and transmitted.

143.   The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendants' material breaches of their agreement(s).

144.   Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendants.

145.   The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

146.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

147.   Defendants failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

148.   In these and other ways, Defendants violated their duty of good faith and fair dealing.

149.   Plaintiff and members of the Class have sustained damages because of Defendants' breaches of their agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

150.     Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

151.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

152.     This claim is plead in the alternative to the breach of implied contractual duty claim.

153.     Plaintiff and members of the Class conferred a benefit upon Defendants in the form of services through employment. Defendants also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate their employment.

154.     Defendants appreciated or had knowledge of the benefits conferred upon themselves by Plaintiff and members of the Class.

155.     Under principals of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their PII because Defendants failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendants at the payrates they did had they known Defendants would not adequately protect their PII.

156.     Defendants should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by them as a result of the conduct and Data Breach alleged here.

### FIFTH CLAIM FOR RELIEF
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

157.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT – 27

158.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

159.    Defendants owed a duty to their employees, including Plaintiff and the Class, to keep this information confidential.

160.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

161.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants as part of their employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

162.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

163.    Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

164.    Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

165.    Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

166.    As a proximate result of Defendants' acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

167.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII are still maintained by Defendants with their inadequate cybersecurity system and policies.

168.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiff and the Class.

169.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

<div align="center">

**SIXTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(On Behalf of the Plaintiff and the Class)**

</div>

170.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

171.    Given the relationship between Defendants and Plaintiff and Class members, where Defendants became guardian of Plaintiff's and Class members' PII, Defendants became a fiduciary by their undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff's and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

172.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendants' relationship with them—especially to secure their PII.

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

173.    Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendants, or anyone in Defendants' position, to retain their PII had they known the reality of Defendants' inadequate data security practices.

174.    Defendants breached their fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

175.    Defendants also breached their fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

176.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

1    determined at trial;

2    G.  Awarding attorneys' fees and costs, as allowed by law;

3    H.  Awarding prejudgment and post-judgment interest, as provided by law;

4    I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the

5         evidence produced at trial; and

6    J.   Granting such other or further relief as may be appropriate under the

7         circumstances.

CLASS ACTION COMPLAINT – 31

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

Dated: October 16, 2024,                    Respectfully Submitted,

*/s/ Samuel J. Strauss*
Samuel J. Strauss (SBN 46971)
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV*
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com

* *Pro hac vice forthcoming*
***Attorneys for Plaintiff and Proposed Class***

CLASS ACTION COMPLAINT – 32